UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEROME RIDDICK,<br>　　Plaintiff, | :<br>:<br>: |
| v. | : No. 3:16-cv-1769 (SRU) |
| SCOTT SEMPLE, et al.,<br>　　Defendants. | :<br>:<br>: |

**INITIAL REVIEW ORDER**

On October 26, 2016, Jerome Riddick, incarcerated and *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983 seeking compensatory and punitive damages against Department of Correction ("DOC") Commissioner Scott Semple, District Administrator Angel Quiros, Warden Henry Falcone, Warden Scott Erfe, Warden Edward Maldonado, and Warden William Mulligan in their individual and official capacities. Riddick argues that the defendants retaliated against him after he filed two lawsuits against DOC employees, in violation of his First Amendment right to free speech. On October 28, 2016, I issued an order staying this case pursuant to the parties' agreement to pursue good faith settlement efforts. *See* Order #7. On January 12, 2017, Riddick moved to vacate my previous order staying the case and for an Initial Review Order to be issued. *See* Mot. to Expedite Initial Review Order, Doc. #10. Upon further review, I grant Riddick's motion to vacate the stay. For reasons that follow, the complaint is dismissed.

**I.　Complaint [ECF No. 1]**

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the

claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

Riddick's complaint alleges that, on February 24, 2015, Falcone and Quiros transferred him from Garner Correctional Institution ("Garner") to administrative segregation at Cheshire Correctional Institution ("Cheshire"). Pursuant to a settlement agreement reached between the parties in another case, Falcone and Quiros agreed to transfer Riddick back to Garner after serving forty-five days in the administrative segregation unit at Cheshire. During his time at Cheshire, Riddick filed two lawsuits against several DOC employees, including Semple, Quiros, Falcone, and Erfe, "raising multiple civil rights claims and discrimination claims . . . ." When the agreed-upon forty-five day term ended, the defendants refused to transfer Riddick back to Garner. In a letter sent to Riddick's attorney, the Connecticut Attorney General's Office, counsel for the defendants, wrote the following:

> At this point, my clients believe he belongs at Cheshire and should complete his [administrative segregation] programming. I understand he has indicated to you that he is willing to abandon his motion to enforce the settlement agreement, but his resistance to mental health care and his renewed interest in litigation puts us in a box. If you take a look at his complaint in the federal suit against Garner, 3:14CV322 (SRU) you will see that he is challenging the very placement in

2

> [administrative segregation] at Garner that we agreed to, claiming now that he is Muslim and unconstitutionally constrained from practicing his religion among other restrictions that are unacceptable to him. Similar claims are raised in his case against Cheshire, along with ADA and other 8th amendment claims. See docket no. 3:15CV528 (SRU). <u>In fact, the latter case raises just about every claim an inmate could bring against his jailers. So in this context of expanded and endless litigation, I see no point in returning him to [Garner] absent some clinical basis for doing so.</u>

Pl.'s Ex. H (emphasis added). In response to Riddick's filing of these other two lawsuits, "the defendants refused to transfer [Riddick] back to Garner, but instead kept him in solitary confinement" at Cheshire.

## II. Official Capacity Claims for Money Damages

Riddick seeks monetary damages against all defendants in their individuals and official capacities. To the extent that Riddick seeks damages from the defendants in their official capacities, the claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). All such claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

## III. First Amendment Claim against Defendants in their Individual Capacities

Riddick claims that all six defendants, Semple, Quiros, Falcone, Erfe, Maldonado, and Mulligan, retaliated against him for exercising his First Amendment rights by refusing to transfer him back to Garner after he filed lawsuits against DOC employees. To establish a First Amendment retaliation claim, Riddick must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks omitted). Riddick "bears the burden of showing that the protected conduct was a substantial or motivating factor in the prison officials'

disciplinary decision." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (internal quotation marks omitted).

"It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under section 1983). A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of four ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to act on information indicating that unconstitutional acts were occurring. *Wright*, 21 F.3d at 501; *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003).

Construing his complaint liberally, I cannot determine how, if at all, each named defendant was personally involved in the decision to keep Riddick confined at Cheshire as a result of the lawsuits. Riddick has attached, as exhibits, several e-mails and correspondences between the Connecticut Attorney General's Office and Riddick's attorney. As shown above, one of those correspondences clearly shows a decision not to transfer Riddick back to Garner in accordance with the settlement agreement. It does not, however, show which DOC employees

made the decision reflected in that correspondence. In fact, none of the defendants in this case is named in any of the exhibits attached to the complaint.

Although each named defendant in this case works in a supervisory capacity for DOC, that fact alone is insufficient to show personal involvement in the alleged constitutional deprivation. *See Johnson v. Glick*, 481 F.2d at 1034 (doctrine of *respondeat superior* does not suffice for claim of monetary damages under section 1983). Moreover, the allegation that Falcone and Quiros were responsible for transferring Riddick from Garner to Cheshire on February 24, 2015, does not indicate whether they were responsible for keeping Riddick confined at Cheshire following the filing of the lawsuits. Without any information about which employees were being represented by the Attorney General's Office in its correspondence with Riddick's attorney or how each defendant was personally involved in the decision to keep Riddick confined at Cheshire following the initiation of the lawsuits, Riddick cannot state a plausible First Amendment claim against any of the defendants. Thus, the compliant must be dismissed.

## IV. Conclusion

The court enters the following orders:

**(1)** Riddick's Motion to Expedite Initial Review Order is **granted**.

**(2)** The complaint is **dismissed** without prejudice to filing an amended complaint setting forth facts indicating the defendants' personal involvement in the claimed retaliation. The failure to file an amended complaint within twenty-one (21) days will result in dismissal of the case with prejudice.

SO ORDERED at Bridgeport, Connecticut this 17th day of May 2017.

/s/STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge